**Carl BEISTLINE, Appellant,**

v.

**CITY OF SAN DIEGO and General Dynamics Corporation, Appellees.**

**No. 15771.**

United States Court of Appeals
Ninth Circuit.

June 3, 1958.

---

McNutly & Squier, Ralph W. Squier, Edgar A. McNulty, San Diego, Cal., for appellant.

Luce, Forward, Kunzel & Scripps, Robert E. McGinnis, San Diego, Cal., for appellees.

Before FEE and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Plaintiff-appellant sued in 1957 to rescind the sale made by him to the City of San Diego in 1947 of eighty-two acres of land located on Kearney Mesa in the said City of San Diego, California, or, in the alternative, for an accounting of

profits. Plaintiff voluntarily sold the property, but only after the City of San Diego had filed a suit to condemn the property for use as a municipal airport. Nine years later, in 1956, the City of San Diego is alleged to have sold the same land to defendant General Dynamics Corporation at a considerable profit. Plaintiff charges in his first cause of action that the representations made to him by the City of San Diego concerning the intended use of the property "were entirely false and untrue," and that the corporate defendant knew they were untrue; in his second cause of action that the condemnation suit constituted compulsion and duress. Plaintiff sought to base jurisdiction in the United States courts on the presence of a substantial federal question. 28 U.S.C. § 1331.

Each defendant moved to dismiss upon the ground of lack of jurisdiction, i. e., that no substantial federal question was involved. Each such motion was granted. Plaintiff was granted leave to amend, but preferred to stand on his complaint, and here presents a timely appeal.

The essence of plaintiff's theory is that a constitutional question exists as to whether a state can deprive a citizen of property without due process of law in violation of section 1 of the fourteenth amendment because of the *taking* of property, i. e., "forcing" the owner to transfer his property to the city, an agency of the state; that appellant acted under compulsion, fraud and duress; that "the central theme of each Count is that the property of plaintiff was *taken* not for a public use, but for a private use * * * that the immunity of plaintiff's property from seizure for private use is an essential element of plaintiff's cause of action."

Plaintiff's theory of recovery thus rests upon several facts assumed to be true: (a) that there was a "taking;" (b) that the transfer of the property was not voluntary; and (c) that the subsequent sale by the City of San Diego proves that the original acquisition was for private use and not for public use as an airport, and hence fraudulent. Each of such assumptions is incorrect.

A "taking" is accomplished by possession under an order for "vesting," Metropolitan Water District of Southern California v. Adams, 1940, 16 Cal.2d 676, 107 P.2d 618, or by payment of a final judgment in condemnation. "The enactment of legislation which authorizes condemnation of property is not such a taking even though it may cause a change in the value of the property." 23 Tracts of Land, etc. v. United States, 6 Cir., 1949, 177 F.2d 967, 969–970. Appellant chose, by settlement, to avoid and not to force or endure any "taking" of his property. None is alleged, and none could be, under the facts of this case. Thiriot v. Santa Clara Elementary School District, 1954, 128 Cal.App.2d 548, 275 P.2d 833.

The facts pleaded by appellant show the sale by him to the City of San Diego was voluntary, albeit triggered by the filing of the suit to condemn. The filing of a suit to condemn is certainly a threat to do an act, but a legal threat, i. e., a "threat" to exercise a sovereign power reserved by and inherent in the state in the interest of all of its people. Rose v. State, 1942, 19 Cal.2d 713, 123 P.2d 505. To hold that the filing of a suit to condemn is a threat constituting legal compulsion and duress would prevent and invalidate any compromise of any disputed value by any condemning authority subsequent to the filing of any suit to condemn. No such theory does or could exist in the law of condemnation, especially when it is recognized that a condemnation proceeding is by its very nature a forced or compulsory sale. Hawaiian Gas Products v. C. I. R., 9 Cir., 1942, 126 F.2d 4, 5, and authority cited therein.

This is not a case presenting the problem raised where land has been dedicated to a public use by conveyance subject to a condition, or impressing a trust. A breach of such a condition or trust may be restrained. Here the transfer of fee simple title was unconditional and voluntary. It was the free choice of appellant,

just as is any compromise of any litigant's law suit.

■ Because a sovereign body plans to acquire private property for a lawful purpose (here an airport), does acquire the property with such purpose, and thereafter changes its corporate mind and uses the property for a different purpose, or even trades or sells the property to another, and at an increased price, does not thereby establish a taking for private use, nor fraud, nor any fraudulent or false or untrue representations. Need for taking the particular land, like the issue of compensation for the taking, is judged solely by the conditions existing at the time of the taking. Reichelderfer v. Quinn, 1932, 287 U.S. 315, 323, 53 S.Ct. 177, 77 L.Ed. 331; Spinks v. City of Los Angeles, 220 Cal. 366, 31 P.2d 193; Arechiga v. Housing Authority of City of Los Angeles, Cal.App., 324 P.2d 973; 18 Am.Jur., Eminent Domain § 124, p. 768.[1] Cf. Ritzman v. City of Los Angeles, 1940, 38 Cal.App.2d 470, 101 P.2d 541.

Appellant was given the opportunity to amend his pleadings, but refused. He prefers to rely on the meager conclusions he pleads, that the purchase and subsequent sale, according to his best information and belief, constitute fraud. The only facts alleged, i. e., the purchase and the subsequent sale, cannot support a charge of extrinsic fraud.

Here, the language quoted in the Thiriot case, supra, is directly in point because of the factual similarity in the two cases. There, the California court said the fraud alleged pertained to one of the main issues in any condemnation suit, the necessity of the taking for a use authorized by law. West's Ann.Cal.Code Civ.Proc. § 1241. The court then pointed out that the fraud charged must be extrinsic or collateral fraud.[2] No suggestion of extrinsic fraud is here pleaded.

■ But were we to assume that appellant could plead or prove facts which would entitle him to try the issues of fraud and duress, he still would not be entitled to bring his action in the federal

---

1. In 18 Am.Jur., Eminent Domain § 124, p. 768, the text reads:

"When land has been acquired for the public use in fee simple unconditional, either by the exercise of the power of eminent domain or by purchase, the former owners retain no rights in the land, and the public use may be abandoned or the land may be devoted to a different use without any impairment of the estate acquired or any reversion to the former owners."

2. " 'What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat or, being regularly employed, corruptly sells out his client's interest.' Pico v. Cohn, 1891, 91 Cal. 129, 133–134, 25 P. 970, 971, 27 P. 537, 13 L.R.A. 336.

"This principle and these rules still obtain. The final judgment of a court having jurisdiction over persons and subject matter can be attacked in equity after the time for appeal or other direct attack has expired only if the alleged fraud or mistake is extrinsic rather than intrinsic. * * * Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court. * * * If an unsuccessful party to an action has been kept in ignorance thereof * * * or has been prevented from fully participating therein * * *, there has been no true adversary proceeding, and the judgment is open to attack at any time. A party who has been given proper notice of an action, however, and who has not been prevented from full participation therein, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary * * * Fraud perpetrated under such circumstances is intrinsic, even though the unsuccessful party does not avail himself of his opportunity to appear before the court. Having had an opportunity to protect his interest, he cannot attack the judgment once the time has elapsed for appeal or other direct attack. * * * ' Westphal v. Westphal, 1942, 20 Cal.2d 393, 397, 126 P.2d 105, 106." Thiriot v. Santa Clara Elementary School District, 1954, 128 Cal.App.2d 548, 550, 275 P.2d 833, 835.

court. Every case involving fraud and duress does not involve a constitutional question of due process. A general allegation of a constitutional issue is sufficient, but the claim or fact upon which the constitutional issue is raised must be pleaded, and "well-pleaded." 2 Moore, Fed.Prac. & Proc. § 8.09, p. 1630 (2d 1957). The facts here, interpreted most favorably toward appellant, show no deprivation of due process by the City of San Diego in the acquisition of the property, and call for the application of the rule of Gully v. First National Bank in Meridian, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, as applied by the court below, and as followed in Rosecrans v. William S. Lozier, Inc., 8 Cir., 1944, 142 F.2d 118. The latter case says (at page 121), quoting in part from Gully, supra:

"It is not always easy to determine when a suit may be said to arise under the Constitution or laws of the United States. Some tests, however, seem to be well recognized. To bring a case within the removal statute, *a right or immunity created by the Constitution or laws of the United States must be the essential element of plaintiff's cause of action.* Gully v. First National Bank, supra. It is not sufficient to warrant removal that in the progress of the trial it *may* be necessary to give a construction to the Constitution or laws of the United States, but the case must substantially involve a dispute or controversy as to the effect or construction of the Constitution, laws or treaties of the United States, upon the determination of which the result depends. *The controversy must be genuine and present as distinguished from a possible or conjectural one.*" [Emphasis added.]

If the plaintiff can plead and prove a good case of fraud and duress, his remedy lies, as it does with any other litigant, in the state court.

We affirm the judgment below for lack of jurisdiction.